## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PRYTANIA MEDIA LLC ET AL**                              **CIVIL ACTION**

**VERSUS**                                                              **NO. 25-0464**

**NETEASE, INC ET AL**                                       **SECTION "B"(4)**

## ORDER AND REASONS

Before the Court are plaintiffs, Prytania Media LLC, Prytania Media Corp, Annie Stain, and William "Jeff" Strain's motion to remand (Rec. Doc. 10), the defendants' opposition to motion to remand (Rec. Doc. 14), the plaintiffs' reply (See Rec. Doc. 15), plaintiffs' response to Court Order Rec. Doc. 24 (Rec. Doc. 27), and defendants' reply to plaintiffs' response to Court Order Rec. Doc. 24 (Rec. Doc. 28-2). Accordingly,

**IT IS ORDERED** that plaintiff's motion to remand is **GRANTED**, remanding this case to the Civil District Court for the Parish of Orleans, State of Louisiana.

**IT IS FURTHER ORDERED** that all other motions and request for oral arguments are **DISMISSED AS MOOT**, deferring to the state court's consideration of same on remand if it so deems necessary. *See, e.g.*, Rec. Docs. 19 and 20.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This business dispute arises from alleged defamation, violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), LA. STAT. ANN. § 51:1401.1, *et seq.*, tortious interference with business relations and negligence. *See generally* Rec. Doc. 2-1. Filed on January 3, 2025, in the Civil District Court for the Parish of Orleans, the suit contends that in late 2022, Mr. and Mrs. Strain, through Prytania Media Corporation, opened an independent game development studio—Crop Circle Games—with a twenty percent share investor, NetEase. Rec. Doc. 2-1 at 3 ¶7-9. To ensure its interests, NetEase appointed Mr. Han as its representative onto the Crop Circle Board

of Directors, as well as other NetEase representatives who attended and contributed to business and Board meetings. *Id.* Crop Circle Games ("**Crop Circle**") also hired a former NetEase employee to help manage the studio. *Id.* It is through these NetEase's and Crop Circle's representatives, including Han and the other manager, that the Strains allege there was a disclosure of false confidential information regarding Crop Circle Games' operations to third parties. *Id.* at 2-1 ¶10.

"As set out in the [a]mended [p]etition, Prytania Media and its founders' reputation and business prospects were irreparably damaged by the unlawful and defamatory rumors concocted and disseminated by [d]efendants." Rec. Doc. 10-1 at 6. Plaintiffs assert that the defendants have admitted to making these alleged false statements. Rec. Doc. 2-1 at 4¶¶15, 119, 120, and 123. These alleged acts of defamation caused plaintiffs ascertainable losses, including business opportunities, goodwill, reputation, and esteem in the industry. *See* Rec. Doc. 2-1.

Pursuant to an agreement between the parties, defendants NetEase and Han accepted service of the petition on February 28. 2025. Rec. Doc. 2 at 3 ¶8. On March 10, 2025, defendants timely removed the case to federal court which they further assert has jurisdiction through 28 U.S.C. § 1332(a)(3). *See* Rec. Doc. 2. At the time of removal Plaintiff then filed its motion to remand, which is currently before the Court. Rec. Doc. 10. The defendants oppose, arguing improper joinder, Rec. Doc. 14, to which plaintiffs reply. Rec. Doc. 15.

## LAW AND ANALYSIS

### Removal Standard

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010). Defendants may remove a state court action to federal court if original jurisdiction

exists. *See* 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002). "Original jurisdiction, in non-maritime claims, lies where the conditions of 28 U.S.C. §§ 1331 [federal question] or 1332 [diversity] are satisfied." *Halmekangas*, 603 F.3d at 292 (alteration in original) (internal quotations and citation omitted). A "plaintiff's properly pleaded complaint governs the jurisdictional inquiry." *See Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848 (5th Cir. 2018); *see also Voice of the Experienced v.* Cantrell, No. CV 23-5067, 2023 WL 6994209 (E.D. La. Oct. 24, 2023) (citing *Hart v. Bayer Corp.*, 199 F. 3d 239, 243 (5th Cir. 2000) (citation omitted)).

The removing party bears the burden of showing that federal jurisdiction exists, and that removal was proper. *See, e.g.*, *Baker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). In assessing whether removal was appropriate, the Court is guided by the principle that "removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723. Furthermore, remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)). Furthermore, as "jurisdictional facts are determined at the time of removal . . . post-removal events do not affect that properly established jurisdiction." *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014) (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 569-70 (2004)). However, "[i]f a [court] lacks subject matter jurisdiction, remand is permitted at any time before final judgment." *Falgout v. Mid. State Land & Timber Co.*, No. 08-5088, 2009 WL 2163152, at *2 (E.D. La. July 16, 2009) (Lemelle, J.) (citing 28 U.S.C. § 1447(c) and *Doddy v. Oxy USA*, 101 F.3d 448, 456 (5th Cir. 1996)).

### 1. Procedural Requirements for Removal

28 U.S.C. §1446(b) states "notice of removal of a civil action . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Here, plaintiffs filed their original petition for damages in the State Court on January 3, 2025. Rec. Doc. 2 at 2¶1. On February 20, 2025, plaintiffs filed an Amended Petition for Damages in the State Court. Rec. Doc. 2 at 2¶4. Prior to this amendment, plaintiffs had only issued service on defendant Crop Circle Corporation. Rec. Doc. 2 at 2¶3. Nevertheless, all defendants, except Crop Circle, accepted service of the petition and citation on February 28, 2025, and timely filed for removal to this Court on March 10, 2025. Rec. Doc. 2 at 2¶8. Thus, defendants' removal was timely.

Additionally, for proper removal, all served defendants are required to join in the removal of an action to federal court. *See* 28 U.S.C. §§ 1441, 1446(b)(2)(A); *see also Gettv Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2D 1254, 1262-63 (5th Cir. 1988). Here, defendants asserted that "taking into account all properly joined parties, the Court has diversity pursuant to 28 U.S.C. § 1332(a)(3) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy . . . is between . . . citizens of different States and in which citizens or subjects of a foreign state are additional parties."). Rec. Doc. 2 at 3¶9. Thus, the question of whether Crop Circle's was properly joined becomes crucial to determining if procedurally this was a proper removal. If Crop Circle is improperly joined, because all other defendants joined in the notice of removal, removal is proper. *See* Rec. Doc. 2.

Service of Process is also considered when determining whether removal was proper. Defendants assert that Crop Circle's was improperly served and therefore remand must be denied. *See* Rec. Docs. 14, 28-2. Though removal is a question of federal law, proper service is defined by

state law. FED. R. CIV. P. 4(e); *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005). In Louisiana, several code articles govern service of process on corporations. LA. CODE CIV. PROC. ANN. art. 1261 defines the method under Louisiana law for service of process on a corporation as "service of citation or other process on a domestic or foreign corporation is made by personal service on any one of its agents for service of process." Article 1261 further provides:

> [i]f the corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by any of the following methods:
>
>> (1) By personal service on any officer, or director, or on any person named as such in the last report filed with the secretary of state.
>>
>> (2) By personal service on any employee of suitable age and discretion at any place where the business of the corporation is regularly conducted.
>>
>> (3) By service of process under the provisions of R.S. 13:3204, if the corporation is subject to the provisions of R.S. 13:3201.

LA. CODE CIV. PROC. ANN. art. 1261(B). If service is unable to be made under Article 1261, "after diligent effort, 'then the service may be made personally on the secretary of state, or on a person in his office designated to receive service of process on corporations.'" LA. CODE CIV. PROC. ANN. art. 1262.

On June 11, 2025, the Court issued an Order requesting for plaintiffs to "file into the record the return of service of process" for Crop Circle. Rec. Doc. 22. Plaintiffs responded to that Order providing they had previously served Crop Circle through the Louisiana Secretary of State. Rec. Doc. 23 at 1. Defendants, in their opposition to the remand, have asserted that plaintiff Jeff Strain is the registered agent for service for Crop Circle. Rec. Doc. 14 at 5; Rec. Doc. 28-2 at 4. Thus, because plaintiffs did not conduct service of process through plaintiff Jeff Strain, defendants argue that the service of process on Crop Circle is ineffective and therefore all properly joined parties are diverse. Rec. Docs 14 and 28.

"The party making service has the burden of demonstrating its validity when an objection to service is made." *Scroggins v. Sw. Elec. Power Co.*, No. CV 24-1568, 2025 WL 1570975, at *2 (W.D. La. June 3, 2025) (citing *River Healthcare, Inc. v. Baylor Miraca Genetics Lab'ys, LLC*, No. CV-22-135-JWD-SDJ, 2023 WL 2542332 (M.D. La. Mar. 16, 2023) (quoting *Holly v. Metro Transit Auth.*, 213 F.App'x 343, 344 (5th Cir. 2007)). The plain language of the federal rules and Louisiana law do not allow for service on a corporation through the Secretary of State unless "diligent effort" has been made to adhere to proper service under Article 1261. LA. CODE CIV. PROC. ANN. art. 1262. As plaintiffs have not refuted that plaintiff Jeff Strain is Crop Circle's registered agent, nor they given any justification for their lack of diligent effort to conduct service in adherence of Article 1261, the Court would not be remiss in finding that plaintiffs had failed to satisfy the burden of demonstrating that service on Crop Circle was proper. Jeff Strain being a plaintiff, in the instant matter, does not excuse plaintiffs' failure to properly effect service of process pursuant to Louisiana law.

Nonetheless, this procedural mechanism is unlikely to create the complete diversity jurisdiction desired by defendants. Under Federal Rule of Civil Procedure 4(m), if the plaintiff demonstrates "good cause" for the failure to properly effect service, dismissal is improper. FED. R. CIV. P. 4(m). To establish good cause, a plaintiff bears the burden of demonstrating "at least as much as would be required to show excusable neglect." *Sims v. Landrieu Concrete & Cement Indus. LLC*, No. 18-9932, 2020 wl 2617867, at *2 (E.D. La. May 24, 2020) (Milazzo, J.) (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)). "Simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* (quoting *Winters*, 776 F.2d at 1306). Being that courts have discretion, we would likely adhere to the "general rule" which provides that "when a court finds [ ] service is insufficient but curable, it

generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Rhodes v. J.P. Sauer & Sohn, Inc.*, 98 F.Supp.2d 746, 750 (W.D. La. Apr. 4, 2000) (quoting *Gregory v. United States Bankruptcy Court*, 924 F.2d 1498, 1500 (10th Cir. 1991)). Thus, this insufficient service would be likely be corrected, making Crop Circle a properly joined in-state defendant, defeating diversity jurisdiction.

**Lack of Subject Matter Jurisdiction**

### 1. Diversity Jurisdiction

Federal diversity jurisdiction under 28 U.S.C. § 1332 exists where there is complete diversity of citizenship of the parties, and where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). Complete diversity means "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019). The citizenship of a natural person is determined to be the state in which they are domiciled. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Non-natural persons are also required to adhere to the rules of diversity. Regarding the determination of citizenship of non-natural persons, such as corporations, the corporation's state of incorporation or the state in which the corporation's principal place of business is located establishes its citizenship. *Midcap Media Fin., L.L.C.*, 929 F.3d at 314 (quoting 28 U.S.C. § 1332(c)(1)). Unlike a corporation, a limited liability company's citizenship is not established by its state of organization.  For the purposes of § 1332(a), "the citizenship of a limited liability company is determined by the citizenship of all of its members." *Est. of Fennelly v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 20-684-SDD-EWD, 2020 WL 7319417, at *2 (M.D. La. Dec. 11, 2020) (citing Harvey *v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)). To properly allege the citizenship of a limited liability company, a

party must identify each of the members and their citizenship. *Id.* (citing 28 U.S.C. § 1332(a) and (c)).

Per the record, plaintiffs Annie Strain and Jeff Strain are natural persons domiciled in Louisiana, making these plaintiffs citizens of Louisiana for diversity jurisdiction. Rec. Docs. 10, 14 at 6, and 15. Regarding Prytania Media Corporation, plaintiffs assert that the corporation was incorporated in Delaware and maintains its principal place of business in Louisiana. Rec. Doc. 2-1 at 2¶3. Thus, Prytania Media Corporation is a citizen of Delaware and Louisiana. Being that Prytania Media LLC is owned 100% by Prytania Media Corp, it is also considered a citizen of Delaware and Louisiana. Rec. Doc. 2-1 at 2¶3.

Defendant NetEase Inc. is a corporation organized in the Cayman Islands with its principal place of business in the People's Republic of China, making it a foreign citizen. *See* Rec. Doc. 2 at 5¶22. Defendant NetEase Interactive Entertainment Pte. Ltd. is stated to be a Singapore private limited company with its principal place of business in Singapore. Rec. Doc. 14 at 6. Thus, for purpose of diversity, NetEase Interactive Entertainment Pte. Ltd. is a foreign citizen. *Id.* Defendant NetEase Information Technology Corporation is a "California corporation with its principal place of business in California," and therefore, a California citizen. *Id.* "Defendant Han Chenglin is a natural person, a permanent resident of Singapore, and a citizen of the People's Republic of China," thus, is a foreign citizen.  *Id.* Despite Crop Circle Games Corporation, being owned 75% by plaintiffs and 25% by NetEase and its affiliates, its citizenship is determined to be Delaware and Louisiana, as it was incorporated in Delaware and has a principal place of business in Louisiana. Rec. Doc. 2-1 at 1¶2.

Plaintiffs, in their motion to remand, argue they have a viable claim against all defendants and that Crop Circle's non-diverse citizenship cannot be disregarded based on improper joinder.

Rec. Doc. 10-1 at 8-20. Defendants, Han Chenglin, NetEase Interactive Entertainment Pte. Ltd., Netease Inc., and NetEase Information Technology Corporation argue remand is inappropriate as the in-state defendant, Crop Circle, was improperly joined, and that these pleadings are nothing but an attempt to change the narrative surrounding the closure of plaintiffs' entities. *See* Rec. Doc. 14 Defendants assert that plaintiffs' claims lack even arguable merit and will soon be dismissed for several reasons, including insufficient pleadings. Rec. Doc. 14 at 3.

Parties do not dispute that this Court would have jurisdiction for 28 U.S.C. § 1332 purposes were Crop Circle's citizenship disregarded. Further, all parties acknowledge that the amount in controversy is valued over $75,000. Rec. Docs. 2 and 10. Accordingly, the issue of whether this Court holds diversity jurisdiction in this matter turns on whether Crop Circle was improperly joined.

### a) **Improper Joinder - Defendant Crop Circle Games Corporation**

The doctrine of improper joinder "entitle[s] a defendant to remove a case to a federal forum unless an in-state defendant has been properly joined." *Mumfrey-Martin v. Stolthaven New Orleans,* Nos. 12-2539, 12-2543, 12-2546, 2013 WL 4875088, at *3 (E.D. La. Sept. 10, 2013) (Lemelle, J.) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied* 544 U.S. 992 (2005)). Because the doctrine of improper joinder is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one, belonging to the removing party. *Id.* (citing *In re 1994 Exxon Chemical Fire*, 558 F.3d 378 (5th Cir. 2009)). "A defendant is improperly joined if the moving party establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that he *fraudulently* alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir.

2016) (citing *Smallwood*, 385 F.3d at 573) (internal quotation marks and citation omitted) (emphasis added); *see also Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003). Because Crop Circle is, in fact, nondiverse, only the latter issue is pertinent to this review. Rec. Doc. 2-1 at 1¶2

Here, the defendants have the burden of establishing that the plaintiffs have failed to state a claim against Crop Circle. Therefore, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Smallwood, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d 644,648 (5th Cir. 2003)). If any of the plaintiffs' claims are viable, diversity jurisdiction is inappropriate. *See Williams*, 18 F.4th at 814 (citing *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 182-85 (5th Cir. 1990) ("collecting cases and stating that, under Supreme Court precedent, 'the colorable assignment of a complete cause of action to defeat removal [is] effective to give the state court exclusive jurisdiction'" and "no authority has as yet been given [federal courts] to take jurisdiction of a case by removal from state court when a colorable assignment has been made to prevent such a removal . . . resort can only be had to the state courts for protection against the consequences of such an encroachment on the rights of a defendant.")). Consequently, it is against the Fifth Circuit's established approach to permit a party to remove a case and then sever a diversity-destroying defendant that has viable claims against it. *Williams*, 18 F.4th at 815.

The sufficiency of a plaintiff's state court petition for purposes of the improper joinder analysis is measured under federal court pleading standards. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). There are two methods for determining the viability of plaintiffs' claims against an in-state defendant. *Mumfrey*-Martin, 2013 WL 4875088,

at *3 (citing *Smallwood*, 385 F.3d at 573). The first method provides that the Court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (citing *Smallwood*, 385 F.3d at 573). "The Rule 12(b)(6) analysis necessarily incorporates the federal pleading standard articulated in *Bell Atlantic Corp. v. Twombly*: 'To pass muster under Rule 12(b)(6), [a] complaint must have contained enough facts to state a claim to relief that is plausible on its face.'" *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 200 (citing *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014) (quoting *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 547 (2007))). From these well-pleaded factual allegations, which are assumed to be true, the court then determines whether they "plausibly give rise to an entitlement of relief." *Ashcroft v.* Iqbal, 556 U.S. 662, 678-79 (2009). "[A] single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi Inc.*, 390 F. 3d 400, 412 (5th Cir. 2004).

Where a plaintiff misstates or omits discrete facts, there is a second method a district court, in its discretion, may utilize. *See Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 207.  In this method, the district court would "pierce the pleadings and conduct a summary judgment type inquiry." *Id.* (citing *Smallwood*, 385 F.3d at 573). A summary inquiry is limited to the identification of discrete and undisputed facts. *Smallwood*, 385 F.3d at 573-74 (5th Cir. 2004). In either analysis, the Court must resolve all contested factual issues and ambiguities of state law in favor of the plaintiff. *Johnson v. Singh*, No. 6:25-CV-00471, 2025 WL 2105371 (W.D. La. June 26, 2025), report and recommendation adopted, No. CV 6:25-0471, 2025 WL 2005019 (W.D. La. July 17, 2025) (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005)).

"[A] court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both." *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 207.  Here, the second one—piercing the veil—is unnecessary. Thus, we will conduct our analysis with the first one. Therefore, if the plaintiffs have stated enough facts to state a claim for relief that is plausible on its face, then this case will be remanded. In their notice of removal defendants acknowledge plaintiffs' "claims for: 1) defamation, 2) unfair trade practices, 3) tortious interference with business relations, and 4) negligence against defendants and Crop Circle." Rec. Doc. 2 at 4¶12. Nonetheless, the defendants state that the plaintiffs have not, and are unable to, state a viable claim against Crop Circle. Rec. Docs. 2 and 14. Defendants argue four reasons for why Crop Circle is improperly joined. Rec Doc. 14 at 4. First, defendants issue Crop Circle is not liable for Mr. Han's alleged conduct under principles of *respondeat superior*. Rec. Doc. 14 at 11. Second, defendants claim that plaintiffs cannot recover against Crop Circle as it is defunct. Rec. Doc. 14 at 18. Third, defendants argue that plaintiffs have no possibility of recovering from Crop Circle as they control Crop Circle. Rec. Doc. 14 at 21. Regarding this argument, defendants aver that the Strains make up the majority of Crop Circle's Board of Directors and currently maintain a seventy percent ownership of Crop Circle. *Id.* Therefore, defendants argues that the plaintiffs are attempting to use a use their corporate forms to cause an injustice—defeat federal jurisdiction through improper joinder. *Id.* at 20. The last issue the defendants discuss in their argument for improper joinder deals with the equally dispositive exception. Defendants inform that Crop Circle can and should be found to be an improper joinder because the bases for dismissing Crop Circle does not apply equally to all other defendants. Rec. Doc. 14 at 21.

<u>Liability Under Respondeat Superior Claim</u>

Responding to defendants' opposition to remand, plaintiffs assert:

> [U]nder principles of *respondeat superior* Crop Circle Games and NetEase and its affiliates are liable in *solido* for the actions of their director on the Board of Directors of Crop Circle Games and employee Mr. Han, and other NetEase employees, who in defaming Plaintiffs, acted at all relevant times within the course and scope of their work for Crop Circle and NetEase and its affiliates.

Rec. Doc. 2-3 at 35¶170 (defamation); *see also id.* at 37¶181 (unfair trade practices); *id.* at 39¶192 (tortious interference). To specify, plaintiffs amended complaint states Han made "inaccurate and prejudicial" statements[1] about Crop Circle to his co-workers at NetEase when he was a member of Crop Circle's Board of Directors. Rec. Doc. 2-3 at 30¶136. Further the amended complaint states that Han's actions "received credibility based on the fact that he was a member of the Board of Directors . . . [and] had unique unfettered access to Crop Circle and, for all purposes relevant to this matter, spoke as its delegate to the market and other parties about its internal dealings." *Id.* Finally, the amended complaint states after these rumors spread, each of Prytania Media's studios, including Crop Circle, became worthless as it could not attract additional investments or investors. *Id.* at 30-31. Plaintiffs argue that these claims are enough to plausibly conclude that discovery may reveal evidence supporting the *respondeat superior* element of a negligent or tortious act on the part of an employee.

While employer liability under the doctrine of *respondeat superior* is a creature of the common law of agency, in Louisiana, the vicarious liability of employers is based on Civil Code article 2320. *Awanbor v. Williams*, 2025-0054, 2025 WL 2206118, at **6 (La.App. 1 Cir. 8/4/25) (citing *Berthelot v. Indovina*, 2021-0517 (La.App. 1 Cir. 12/22/21), 340 So.3d 119, 124, *writ*

---

[1] Plaintiffs include an excerpt from the minutes they allude to in their reply, which they allege, "prove" Han initiated the rumor that "precipitated this dispute." Rec. Doc. 2-3 at 28 n.36 (citing to the Minutes of the Board of Directors of Crop Circle Games (March 7, 2024), p. 8-9 "So I told my **coworkers** I'm really surprised that the company is running out of runway so quickly. I am sorry that this leaked to the public market . . . that's likely where the **second** rumor came from"). While it can be argued that this statement does not constitute an admission, the argument that it is an admission is not a blatant misstatement or omission of discrete facts, therefore we do not feel that a piercing of the pleadings is necessary.

*denied*, 2022-00165 (La. 3/15/22), 334 So.3d 394; *see also Brasseaux v. Town of Mamou*, 1999-1584 (La. 1/19/00), 752 So.2d 815, 820). Louisiana law states "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." LA. CIV. CODE ANN. art. 2320. To hold an employer liable under the doctrine of *respondeat superior*, a plaintiff must establish (1) "an employer/employee relationship," (2) "a negligent or tortious act on the part of an employee," and (3) "the act complained of must be committed in the course and scope of employment." *See Lewis v. Walmart Inc.*, No. CV 24-1765, 2024 WL 4274332, at *2 (E.D. La. Sept. 24, 2024) (Lemelle, J.) (citing *Bryan v. Diaz*, No. 24-1663, 2024 WL 3887001, at *3 (E.D. La. Aug. 21, 2024) (Africk, J.) (citing *Jones v. Maryland Cas. Co.*, 2018-0552, p.10 (La. App. 4 Cir. 5/11/22), 339 So.3d 1243, 1249)). "Under [this] doctrine, employers are not liable for the intentional torts or criminal acts of their employees if those acts are committed outside the scope of their employment." *United States v. Am. Com. Lines, L.L.C.*, 875 F.3d 170, 178 (5th Cir. 2017).

First to be determined is whether plaintiff's claims are enough to conclude he was an employee of Crop Circle. As the determination of whether a party may be held vicariously liable for the torts of another depends on whether the tortfeasor is characterized as a servant. *Whetstone v. Dixon*, 616 So.2d 764, 770 (La. App. 1 Cir. 4/28/93), *writs denied*, 623 So.2d 1333 (La. 1993), and *writ denied*, 623 So. 2d 1333 (La. 1993). "A servant is defined as one employed to perform services in the affairs of another and who is subject to the other's control or right to control with respect to the physical conduct in the performance of the services." *Price v. North*, 2021-0236 (La. App.1 Cir. 10/18/21), 331 So.3d 959 (citations omitted). Thus, a non-servant, unlike a servant, contributes to the master's business, but their actions are not so closely controlled by the master as to dictate how or when they are to be conducted. Louisiana cases have provided several factors

indicative of a master-servant relationship, including: (1) uncompensated performer; (2) status within the association; (3) specific mission; (4) intense relationship; (5) control; (6) role of the master in conferring authority and exercising control; and (7) direct benefit to the association. *Id.* (citing *Whetstone*, 616 So.2d 764 at 770 (quoting *Ermet v. Hartford Ins. Co.*, 559 So.2d at 476 (La. 1990) ("[O]ur jurisprudence has drawn freely from the common law in applying the general code principles to concrete master-servant problems."))).

In the plaintiffs' amended complaint they state, "Han is a NetEase employee [who] also serve[s] on the Board of Directors of Crop Circle as NetEase IE's <u>representative director</u>." Rec. Doc. 2-3 at 7¶15 (emphasis added). Plaintiffs state that as director, Han "ha[s] the authority to hire a manager to engage counsel to represent Crop Circle Games in this matter, respond to any request for indemnity, and to pursue claims against NetEase." Rec. Doc. 2-3 at 7¶20. Further, plaintiff asserts that "Han was directly involved in the management of the Louisiana-based company, as well as the actionable conduct that occurred within the State of Louisiana." Rec. Doc. 2-3 at 9¶28. While defendants argue to the contrary stating that Han was a "non-management director who was never employed by Crop Circle, played no role in its operations, and did nothing beyond sitting on Crop Circle's Board of Directors, which met only three times in the company's history and only after the company's financing situation started to become dire."  Rec. Doc. 14 at 13. For this analysis, plaintiffs' claims are enough to conclude that discovery may reveal further evidence of an employment relationship.

Regarding the element of tortious act or conduct by the employee, Plaintiffs claims are enough to plausibly conclude that discovery may reveal evidence supporting tortious conduct on behalf of defendant Han. One need only consider one of the torts alleged, defamation, where the plaintiffs would be required to show "that [Han], with actual malice or other fault, published a

false statement with defamatory words which caused the plaintiff damages." *Zelenak v. Beauregard Elec. Coop. Inc.*, No. 2:24-CV-01803, 2025 WL 2025177 (W.D. La. July 18, 2025) (citing *Sassone v. Elder*, 626 So.2d 345, 350 (La 1993)). "A pure statement of opinion, which is based totally on the speaker's subjective view, and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation." *Id.* (citing *Bussie v. Lowenthal*, 535 So.2d 378, 381 (La. 1988)). Nonetheless, "an expression of opinion is actionable only if it implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, made with actual malice, and concern another." *Id.* (citing *Fitzgerald v. Tucker*, 737 So.2d 706, 717 (La. 1999)). Accordingly, here plaintiffs' claims are enough to conclude that discovery may reveal evidence supporting their allege claim of defamation by Han.

The final issue to determine is whether plaintiffs' claims are enough to establish that defendant Han's alleged tortious conduct occurred within the course and scope of his employment? Courts' determination of whether conduct is in the course and scope of employment is a "context-specific inquiry." *Bryan*, 2024 WL 3887001 at *3 (citing *Orgeron ex rel. Orgeron v. McDonald*, 639 So.2d 224, 226-27 (La. 1994)). "Whether an employee's conduct is sufficiently employment-related to impose vicarious liability is a mixed question of law and fact." *Duncan v. Celestine*, No. CV 18-6143, 2019 WL 5067122, at *3 (E.D. La. Oct. 9, 2019) (Feldman, J.) (citing *Russell v. Noullet*, 98-816, p.5 (La. 12/1/98), 721 So.2d 868, 871). If the employee is acting within the course and scope of his employment, "the act 'is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part[] by a purpose to serve the employer.'" *Champagne v. United States*, NO, CIV.A. 13-299, 2014 WL 222069 (E.D. La. Jan. 21, 2014) (Fallon, J.) (internal quotations omitted) (citing *Timmons v.*

*Silman*, 99-3264 (La. 5/16/00); 761 So.2d 507, 510). Factors that may assist a court in determining

if actions are committed within the course and scope of employment include:

> The payment of wages by the employer, the employer's power of control, the
> employee's duty to perform the particular act, the time and place and purpose of
> the act in relation to service of the employer, the relationship between the
> employee's act and the employer's business, the benefits received by the employer
> from the act, the motivation of the employee for performing the act, and the
> reasonable expectation of the employer that the employee would perform the act.

*Id.* (citing *Oregon v. McDonald*, 93-1353 (La. 7/5/94); 639 So.2d 224, 227).


Here, the parties dispute Han's scope of employment with Crop Circle. Nonetheless, in

viewing the amended complaint, we see that plaintiffs have alleged defendant Han was speaking

to "NetEase, part owner and investor, regarding Crop Circle." Rec. Doc. 10-1 at 15 (citing Rec.

Doc. 2-3 at 28¶120). Further, plaintiffs also assert that defendant Han was speaking to "third-party

investors—yet another facet of [defendant] Han's role as a Crop Circle director." *Id.* (citing Rec.

Doc. 2-3 at 30¶136); *see also* Rec. Doc. 2-3 at 28¶120. The factual matters alleged are enough to

plausibly conclude that discovery may reveal further evidence supporting a finding that defendant

Han was acting within the course and scope of his employment at Crop Circle.

Accordingly, because the plaintiffs have stated more than mere legal conclusions or formulaic

recitations of the elements of *respondeat superior* liability, it is plausible the factual matter alleged

raises a reasonable basis for the plaintiffs to conceivably recover against all the defendants,

including Crop Circle. *See Smallwood*, 385 F.3d at 573.

<u>Possibility of Recovery from Defunct Corporation</u>

Defendants claim that the non-diverse defendant Crop Circle is a defunct corporation,

which precludes any possibility of plaintiffs' ability to recover against this entity. The legal status

of a corporation is governed by state law. *Gibson v. BP Am. Prod. Co.*, No. CV 17-1439, 2018 WL

914054 (W.D. La. Jan. 30, 2018), *report and recommendation adopted sub nom. Gibson v. BP Am. Prod. Co.*, No CV 17-1439, 2018 WL 912277 (W.D. La. Feb. 15, 2018) (citing *Vill. of Montpelier v. Riche, Chenevert & Andress Const. Co., Inc.*, 43 B.R. 736, 738 (M.D. La. 1984) (citing *inter alia*, *Gould v. Brick*, 358 F.2d 437 (5th Cir. 1966))). "The Courts are split on whether a plaintiff has a reasonable possibility of recovery against an inactive corporation." *Lowry v. Total Petrochemicals & Ref. USA, Inc.*, No. CV 18-0864, 2018 WL 5931146, at *4 (W.D. La. Oct. 26, 2018), *report and recommendation adopted*, No. CV 18-0864, 2018 WL 5931111 (W.D. La. Nov. 13, 2018). In *Beall*, the court held that a non-diverse corporation, who had failed to file annual reports with the Louisiana Secretary of State, was properly joined as the evidence before it simply indicated that the corporation at issue was an inactive corporation. *Beall v. Conoco Phillips Co.*, No. 08-289, 2008 WL 2433579 (M.D. La. June 16, 2008). Whereas, in cases such as *Weinstein* or *Ashley* the court found that removal was appropriate when the corporations in question "[would] never make an appearance, will never participate, and will never be available for recovery" in those proceedings. *See Ashley v. Devon Energy Corp.*, No. 14-512, 2015 WL 803136, at *2 (M.D. La. Feb. 25, 2015); *see also Weinstein v. Conoco Phillips*, No. 13-919, 2014 WL 868918, at *1 (W.D. La. Mar. 5, 2014).

The evidence adduced by the defendants merely establishes that both defendants and plaintiffs are actively refusing to act on behalf of Crop Circle. *See* Rec. Docs. 10, 14, 15. It is agreed that this method of subterfuge reflects a means of "self-help" and "preposterous" inactivity by the entirety of Crop Circle's Board of Directors. However, it goes against precedent and logic to find that a revocation of incorporation by the Louisiana Secretary of State equates to a finding of no possibility of recovery, or, improper joinder, especially because Crop Circle has not been proven to be a "shell with no power or possibility of action." Rec. Doc. 14 at 19. Defendants stating

that "the Strains appear to have fired all of Crop Circle's employees and closed its business operations, while leaving no known assets" is insufficient. *Id.* While it is troubling to see the manipulation displayed by these absentee directors, based on the existing record, the defendants have not established that there are no undistributed assets attributable to Crop Circle.

*Plaintiffs' Ownership and Control of Crop Circle*

In their opposition to remand, defendants assert that plaintiffs have no possibility of obtaining relief against Crop Circle because they control it. Rec. Doc. 14 at 20. Defendants aver that the Strains "made up the majority of Crop Circle's Board of Directors." Rec. Doc. 14 at 21. "[The Strains] have the power to elect and remove a majority of the members of the Board of Directors, through their ~70% ownership." *Id.* Due to this control, defendants argue that the plaintiffs are essentially suing their alter ego. *Id.* at 20. Attempting to support this argument, the defendants refer to *Johnson v. Heublein, Inc.* where a Mississippi court was informed in the initial complaint that defendants-turned plaintiffs, GSE and Walker, and another defendant, Maslowski, were alter egos of each other. 982 F.Supp. 438, 440 (S.D. Miss. 1997), *aff'd*, 227 F.3d 236 (5th Cir. 2000). Upon amendment of the complaint, where GSE and Walker became plaintiffs, it was axiomatic, that Maslowski was improperly joined and could not be used to defeat diversity. *Id.* at 444-45. Reasoning for that Court's finding of improper joinder included plaintiffs' "failure to serve this Defendant[] . . . with any pleadings, documents or other papers related to this matter, except for the service of the Original Complaint." *Id.* at 445.

"Courts will apply the alter ego doctrine and hold a parent liable for the actions of its instrumentality in the name of equity when the corporate form is used as a 'sham to perpetrate a fraud.'" *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (quoting *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988)). The alter ego

doctrine only applies if "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003). To prevail, the defendants would have to demonstrate that the plaintiffs used their control over Crop Circle to commit a fraud or injustice against them.

Here, defendants have not proven their "alter ego" theory. The defendants have failed to show the plaintiffs used Crop Circle to commit a fraud or injustice against them. Further, while plaintiffs do own a substantial percentage of the corporation, defendants also control this entity in that some own thirty percent of Crop Circle, and one, Han, sat on its Board of Directors. Rec. Doc. 14 at 21. Defendants' comparison of plaintiffs' actions to those seen in *Johnson v. Heublein, Inc.* also fail as plaintiffs have actively pursued their alleged claims against Crop Circle. *See* Rec. Docs. 10 and 15.

*Equally Dispositive Exception*

The defendants appear to argue both that the complaint fails to state a claim for relief against Han, and that, after plaintiffs have no reasonable basis of recovery against the in-state defendant. Defendants' reasoning states that both that plaintiffs have failed to state a claim and the defendants' belief that plaintiffs are unable to show that Crop Circle should be held liable for Han's actions. Because defendants' position is that there is no reasonable basis for predicting recovery against the non-diverse defendant the equally dispositive exception does apply.

> When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, there is no improper joinder. Rather, in such a case, there is only a lawsuit lacking merit. In other words, there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that the plaintiff's case [is] ill-founded as to all the defendants.

20

*Brown v. James Constr. Grp.*, No. 3:19-CV-01060, 2019 U.S. Dist. LEXIS 211877, at *7 (W.D. La. Nov. 20, 2019) (citing *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3D 278, 283-84 (5th Cir. 2007)).

Here, the removing defendants have not satisfied the heavy burden of demonstrating that plaintiffs have no possibility of recovering from Crop Circle. Consequently, Crop Circle is a proper party to the suit, and because the parties are not completely diverse, the Court does not have subject matter jurisdiction over this case. Accordingly, it is recommended that plaintiffs' motion to remand be granted.

**Federal Question Jurisdiction**

Under 28 U.S.C. § 1331 district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. A "plaintiff's properly pleaded complaint governs the jurisdictional inquiry." *See Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848 (5th Cir. 2018); *see also Voice of the Experienced v.* Cantrell, No. CV 23-5067, 2023 WL 6994209 (E.D. La. Oct. 24, 2023) (citing *Hart v. Bayer Corp.*, 199 F. 3d 239, 243 (5th Cir. 2000) (citation omitted)). Thus, making the "plaintiff the master of his complaint" and empowers him to decide whether his case ends up in state or federal court. *Elam*, 635 F.3d at 803 (citing *Bernhard*, 523 F.3d at 551). Were the plaintiff to plead "only state-law claims, there is no basis for federal-question jurisdiction." *See, e.g.*, *Smith*, 735 F.App'x at 852 (citing *Elam*, 635 F.3d at 803). Nonetheless, if a district court can exercise original jurisdiction over an action, then a federal court utilizes the procedural mechanisms provided in 28 U.S.C. § 1441 and § 1446. 28 U.S.C. § 1441; 28 U.S.C. § 1446.

Here, defendants argue that this Court may exercise federal question jurisdiction over this matter because, per the defendants, plaintiffs' claims involve a federal regulatory violation. Rec. Doc. 14 at 24. Furthering this argument, defendants compare this matter to *BFNO Properties, LLC v. Housing Authority of New Orleans*, where the presiding court found by looking at the totality of the circumstances, the federal issues raised were sufficient to confer federal question jurisdiction. Rec. Doc. 14 at 24-25 (citing No. 15-300, 2015 U.S. Dist. LEXIS 50181, at *26-28 (E.D. La. Apr. 16, 2015)). However, there, the issues involved contracts administered under a federal agency which required terms to adhere to federal laws and regulations. *Id.* Here, plaintiffs' claims reference federal law but does not require interpretation or raise federal issues to confer federal question jurisdiction. Accordingly, as defendants' argument regarding federal question jurisdiction is unpersuasive and because any ambiguities are construed against removal this matter should be remanded.

**Realignment**

Defendants assert that diversity jurisdiction would exist if the parties were realigned to reflect their true interest in this matter. *See* Rec. Doc. 14 at 22. "In ascertaining the proper alignment of parties for jurisdictional purposes, courts have a duty to look beyond the pleadings[] and arrange the parties according to their sides in the dispute. *Am. Vehicle Ins. Co. v. Adams*, No. 11-CV-229, 2011 WL 4344099, at *2 (M.D. La. Sept. 14, 2011) (citing Griffin *v. Lee*, 621 F.3D 380, 388 (5th Cir. 2010)); *see also Ashford v. Aeroframe Servs. L.L.C.*, 907 F.3d 385, 387 (5th Cir. 2018) (quoting *City of Indianapolis v. Chase Nat. Bank of City of N.Y.*, 314 U.S. 63, 69 (1941)). The Fifth Circuit has stated that "realignment is to be determined according to the principal purpose of the suit and the primary and controlling matter in dispute." *Id.* (citing *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984)).

We look to previous 5th Circuit rulings like *Zurn Indus., Inc. v. Acton Const. Co.* to determine whether realignment is proper in the instant matter. 847 F.2d 234, 235-236 (1988). In *Zurn*, an unpaid subcontractor had to sue its client for reimbursement for services rendered. *Id.* That same client was later found to have cross-claims and counterclaims with other defendants included in the lawsuit. *Id.* at 236. Nonetheless, the court rejected defendants' argument that the client was the "true plaintiff." *Id.* at 237, 238. Instead, the court recognized that the primary claim was the plaintiff's unpaid labor, and it was found to be of no consequence that the client defendant had cross-claims against the other defendants or that plaintiff may be aligned with the defendant for those cross-claims. *Id.* at 237. The instant matter mirrors *Zurn*, Crop Circle will likely raise claims against other defendants, however the plaintiffs' claims for defamation, unfair trade practices, and tortious interference are the primary claims, thus realignment is improper. Rec. Doc.10-1 at 4.

New Orleans, Louisiana, this 10th day of September, 2025

_____
SENIOR UNITED STATES DISTRICT JUDGE